WILLIAM FIRTH CO. v. MILLEN COTTON MILLS. SOUTHERN
COTTON MILLS & COMMISSION CO. v. SAME. C. E.
RILEY & CO. v. SAME.*

(Circuit Court, S. D. Georgia, N. E. D. May 4, 1903.)

1. CORPORATIONS—LIENS—SALE OF ASSETS—ATTORNEYS FOR STOCKHOLDERS—FEES.

Suit having been brought to foreclose liens on a new cotton mill, the property of a corporation, petitioners filed a bill on behalf of certain stockholders, alleging that the suit to sell the property was in aid of a collusive combination to deprive such stockholders of their interest, and prayed that the court take charge of the property, and operate the same for the payment of the corporation's debts. The bill was consolidated with the prior proceedings without objection, and, on petitioners' initiative, an expert was appointed, who made a valuable report to the court as to the property and the advisability of operating the same, after which a decree of sale was ordered on the combined bill, at which only $50,000 was bid for property worth $160,000. This sale was set aside on petitioners' objection, and a resale ordered at an upset price of $90,000, for which the property was sold. Held, that petitioners, having rendered valuable services both to the court and to the creditors, were entitled to a fee of $1,500 out of the proceeds of the sale.

In Equity. Petition of Erwin & Callaway and Hall & Wimberly, for attorney's fees. Exceptions to master's report.

_____
* Reversed on appeal. See 129 Fed. 79.

Marion Erwin, Merrel P. Callaway, John I. Hall, and Olin J. Wimberly, for petitioners.

William K. Miller, for J. R. Lamar, trustee, purchaser.

E. H. Callaway, for Millen Cotton Mills.

SPEER, District Judge (orally). The equity of solicitors for the applicant here is based upon the following facts: There was a bran new cotton mill of modern construction, with modern machinery, complete and ready for operation. It cost $160,000. Some of its directors were also creditors. They were entering into negotiations with other creditors for the purpose of bringing about a sale of the property at much less than its real value. There can be no doubt about these facts. One of these creditors, namely, the William Firth Company, brought an original bill seeking to foreclose certain liens and sell the property. The stockholders who had put their means in large amount in this venture saw that their all therein invested was threatened, and they brought a separate bill with a view to have the court take charge of the property, protect it from collusive combinations which threatened to ruin all except those in the alleged combination, and if possible have such an investigation made as would enable the court to determine if it could be operated profitably, and thus work itself out of debt. This bill, without any exception from any quarter, was by order of the court consolidated with the original bill for foreclosure, and thereafter the cases proceeded together. The sale was had under the consolidated bills. Adequate compensation, $1,500 in amount, was by the purchasers, and through a private agreement of which the court was not apprised until the hearing, paid the solicitors, who filed the original bill. It was stated in judicio by one of the solicitors for the purchasers, who were also the lienholders, that it was deemed safer to pay off these solicitors than to fight them, but all compensation is refused to Messrs. Hall & Wimberly and Erwin & Callaway, who brought the bill intended to conserve the properties, and who now apply for an allowance. In addition to these proceedings, C. E. Riley & Co. filed another bill to foreclose mechanics' liens, and their solicitors were paid. It is quite safe to conclude that their fees were deducted from the large values these purchasers secured by this litigation; in other words, from the fund in court. We, however, have no knowledge of the amount paid these gentlemen, who now represent the purchasers resisting the claim of Hall & Wimberly and Erwin & Callaway. Mr. E. H. Callaway, counsel for the Millen Cotton Mills, has also been paid by private understanding, presumably from the same fund. It is to be observed that his client through answer filed by him expressly approved the effort of the solicitors now seeking compensation to save the property by their attempt to have the receivers work it out of debt. Upon the averments of this bill such investigation was made, an expert was appointed, the receiver under the original bill of William Firth Company not having the requisite technical knowledge, and the expert Mr. Tracy I. Hickman made a careful investigation into the status and character of

the property and the facilities for operation, and with the co-receiver made a joint report to the court. This report was of undeniable value, not only to the court, but to all of the creditors. The receivers, it is true, reached the conclusion that the property could not be operated profitably by them, and that, in itself, was a matter of very great value to all the parties at interest, because otherwise the court might have gone forward in the effort to keep the enterprise a going concern, and might for the lack of information have entailed greater loss on the creditors. The investigation thus made by the receiver appointed under the bill filed by the attorneys making application for counsel fees was generally of great value to the court, and his general participation in the management and conservation of this property, he being an experienced mill man, was also advantageous to the trust fund. Finally, however, the property was brought to sale. It was alleged that the combination had been made to sell it for $40,000, and it is significant that the bid as made for it, in which the local directors and the other lien creditors were interested, was for $50,000, and those parties who were charged as combining to sell it in the first instance were in large measure intended to be the beneficiaries of this bid. The solicitors now seeking compensation filed objections to the price offered, and upon full hearing the bid was held inadequate. These gentlemen attended the hearing of the motion to confirm the sale, and made a full showing why it should not be confirmed. A resale was ordered, and the property brought the sum of $90,000, an increase of 44 per cent. over the bid originally made. This sale was approved.

Now, it cannot be questioned that the conduct of these solicitors was meritorious. They did not succeed in accomplishing all that they set out to do in the first instance, but it seems a just conclusion that they contributed to increase the aggregate value of the fund in court from $50,000 to $90,000. They appeared at all the trials of the various issues in the cause. These were numerous. Their counsel assisted the court in every way possible, they took part in all the efforts to resuscitate this venture which was earnestly and persistently attempted by the court with a view to save the creditors and stockholders as well, and to bestow upon the community where the mill was situated the great benefits to result from the operation of such an establishment.

In the exercise of the equitable discretion in such cases justified by the authorities, it seems justifiable to allow these gentlemen compensation for their services. Besides, there will be no great hardship on the syndicate of creditors and directors of the Millen Cotton Mills, who, as the result of these proceedings, have obtained a clear title to a new mill, with the most modern and costly machinery, worth $160,000, for $90,000 of their claims. The actual price they paid, reduced to a money basis, is in fact much less. It is apparent to the court that but for the action of the solicitors now seeking compensation the mill would have been sacrificed for a little more than half this sum, with utter ruin to every interest save the purchasers thus favored; and leaving $40,000 of liens unpaid, with the inevitable delay, litigation, and diminution of the trust fund which

must have resulted by the efforts of those parties to recoup themselves.

We conclude, therefore, that the solicitors before the court asking an allowance are entitled to compensation, under the circumstances; and since it is conceded on all hands that, if entitled at all, a fee of $1,500 will be entirely reasonable, that sum will be allowed.