SANT *v.* PERRONVILLE SHINGLE CO.

1. CORPORATIONS—ACCOUNTING—EVIDENCE.
    In a chancery proceeding for an accounting and the winding up of a corporation, evidence considered, and *held*, to sustain the claim of a stockholder that $2,000 which had been withdrawn by him from the assets had been advanced as a loan to enable the corporation to purchase timber lands, and was not paid as a part of his subscription to stock.

2. SAME—ACCOUNTING—EQUITY—CONFUSION OF ACCOUNTS.
    *Held*, also, that the affairs and accounts of the corporation were not so confused and chaotic as to require the court to apply the doctrine of confusion of goods as to the president and general manager.

3. SAME—FRAUD.
    Evidence also *held*, to sustain the finding of the trial court

that the president and manager had not conspired with the secretary to defraud the corporation or complainants, and that in his dealings with the company the president should be charged with losses arising from operating lumber camps.

4. SAME—STOCKHOLDERS' SUITS.

That a minority stockholder may file a bill to force an accounting and wind up the affairs of the corporation whose officers in control refuse or neglect to do so, is well settled in Michigan.

5. SAME—EQUITY.

In such case it is unnecessary before commencing suit to demand of those in control to take legal steps in behalf of the corporation.

6. SAME—EQUITY—REIMBURSEMENT—ATTORNEY'S FEES.

One jointly interested with others in a common fund, who in good faith maintains the necessary litigation to save it from waste and secure the proper application, is entitled in equity to reimbursement for his expenses.

7. SAME.

And although the corporation consisted only of complainants and defendants as stockholders, and the former alone received benefits from the litigation conducted in behalf of the corporation, it is equitable that the corporation should pay the reasonable expense of restoring its funds and assets.

8. SAME—ATTORNEY AND CLIENT—REASONABLE FEES—STOCKHOLDERS' SUITS—COSTS.

No contract made by complainants with their solicitor is binding on the court as to the amount of fees. Only such an amount as may be reasonable is allowable out of the fund as expenses to complaining stockholders; and in determining the amount to be awarded for such purpose considerable latitude should be given to the lower court which has better means of determining what is customary and reasonable in the locality in question than has the appellate court.

9. SAME—TAXED COSTS—WITNESS FEES—EXPERT TESTIMONY.

A fee of $1,100 for services of an expert accountant in auditing the books of the defendant corporation was improperly taxed as costs in the suit. The amount, however, might have been allowed as an item of expense and is so

treated, on appeal. Taxable costs are limited to such items as are fixed by statute.

10. PARTIES—ACCOUNTING—EQUITY.

The holder of one share of stock of par value $10, who held his stock merely to qualify as director in a corporation, was not a necessary party to a suit to wind up its affairs and for an accounting; where he appeared at the taking of testimony and made no effort to intervene.

11. CORPORATIONS—PLEDGES—PROTECTING INTEREST OF PLEDGEE.

Whether or not the stock held by complainants had been pledged to third parties was immaterial, under a decree directing that the amount fixed should be paid only upon the production and surrender of the certificates of stock claimed by complainants; the pledgee being thus protected.

Appeal from Menominee; Stone, J. (Final decree entered by Flannigan, J.) Submitted June 4, 1913. (Docket No. 29.) Decided March 26, 1914.

Bill by Amelia A. Sant and Ralph Sant as administrators of the estate of Abraham Sant, deceased, against the Perronville Shingle Company and Manizeppe Perron, for an accounting and to wind up the corporation. From a decree for complainants, both parties appeal. Modified and affirmed.

*Cummiskey & Spencer*, for appellants.

*A. L. Sawyer*, for appellees.

KUHN, J. This suit was commenced in 1906 by the complainants filing a bill of complaint praying for an accounting of the affairs and property of the defendant company and for its dissolution. The Perronville Shingle Company is a Michigan corporation, organized in October, 1899. It had a capital stock of $15,000, which was fully paid in, and was divided into 1,500 shares of $10 each, of which 999 shares were owned by the defendant Manizeppe Perron, one share by A. H. Meloche, two shares by Abraham

Sant, now deceased, and 498 shares by the complainant Amelia A. Sant. Perron, Meolche, and Abraham Sant constituted the board of directors. Defendant Perron is the president and treasurer of the company, and Meloche its secretary. The company engaged in the business of manufacturing and selling lumber, shingles, and other forest products at Perronville, Delta county, in this State.

The bill charges that the defendant Perron conspired with the defendant Meloche to convert the assets of the company to the use of defendant Perron, and that they had been selling and disposing of the corporate property without accounting therefor to the corporation. It further charges that Perron and Meloche, holding a majority of the capital stock, did not intend to institute proceedings in a court to wind up its corporate affairs, and intended thereby to deprive complainants of participating in any way in the profits and property of the corporation. The bill also charges that the company has ceased to operate, and is virtually dead, and it prays that the affairs of the company be wound up, and that a receiver be appointed to take possession of the assets, with power to collect the accounts and dispose of the assets and pay the indebtedness, and for other general relief. No receiver was appointed, but an order of the court was made that such receiver would not be appointed upon Perron filing a bond in the sum of $10,000 for the payment of any decree which might be entered against him or the defendant company. This bond was filed and the case was referred by the court to a special commissioner to take testimony and report. The taking of the testimony before the special commissioner covered a considerable period of time, and when his report was filed the defendants excepted thereto, and in the fall of 1909 the exceptions to the commissioner's report were argued before Mr. Justice Stone, then judge of the twenty-fifth judicial circuit.

The Ford River Lumber Company, in August, 1909, filed a petition, claiming to be a creditor of the defendant company to the amount of over $6,000, and asked leave to intervene and to be paid the amount of its claim before distribution of the assets of the defendant company among its stockholders. This petition was also heard before Justice Stone, and on December 7, 1909, he filed an opinion in which the findings of the commissioner were reviewed and a different determination arrived at than the one had by the commissioner, and the court found that defendant Perron was indebted to the defendant company in the sum of $10,884.26, which indebtedness constituted the sole assets of the company. He also ordered that the case be referred back to the commissioner to take evidence and report upon the claim of the Ford River Lumber Company, and upon such other claims as might be presented. The commissioner gave notice by publication to the creditors of the defendant company to present their claims, and the only claims presented were those of the Ford River Lumber Company and A. L. Sawyer, the solicitor of the complainants, for legal services in the cause. The commissioner refused to entertain the claim of Mr. Sawyer, on the ground that it should be presented direct to the court, but found that the defendant company was not indebted to the Ford River Lumber Company and allowed on a cross-bill the sum of $1,865.42 in favor of the defendant corporation. The finding of the commissioner as to the claim of the Ford River Lumber Company was excepted to, and a hearing on this claim was subsequently had before Hon. Richard C. Flannigan, circuit judge, who allowed the claim of the Ford River Lumber Company at $3,443.88. The circuit judge also allowed the solicitor for complainants the sum of $3,000, and allowed costs to the complainants in the sum of $1,579.80. There is no contest in this court concerning the claim of the Ford

River Lumber Company, but from the various other provisions of the decree, both complainants and defendants have appealed.

The decree of the court provides in part as follows:

"And the court having heard said arguments and considered the same and the proofs and the pleadings herein, and having filed herein its further opinion and findings upon the remaining issues herein, to the effect that the claim of the Ford River Lumber Company against said defendant Perronville Shingle Company be allowed at the sum of $3,443.88; and that the said claim of A. L. Sawyer against said defendant Perronville Shingle Company for services and disbursements in behalf of said defendant corporation in its accounting in said cause with the defendant Menasip Perron be allowed at the sum of $3,226.30; and that the costs of the complainants be taxed against the defendants for the following several amounts, to wit:

| | | |
|---|---:|---:|
| For disbursements to sheriff, register, court commissioner on original reference, and for printers' fees according to the items of said bill of costs, aggregating.................... | | $443 70 |
| For witness fees as follows: | | |
|     A. Sant ..................... | $21 00 | |
|     D. F. Daley................. | 1 10 | |
|     Fred Leroux ............... | 41 00 | |
| For expert accountant's fees and disbursements ................ | 1,100 00 | 1,336 10 |
| Making an aggregate of complainants' costs of ........................... | | $1,579 80 |

"And it further appearing from the records in this case that the defendant Perron has paid upon the disbursements so allowed to said A. L. Sawyer, pursuant to an order entered herein on the 4th day of May, 1911, the sum of $51.03, thus leaving a balance due said A. L. Sawyer on said allowance of the sum of $3,174.80; and it further appearing from the records and evidence in the case that this action was commenced in behalf of claimants by Messrs. Mills & Cain as their solicitors, and that by agreement between them and the above-named A. L. Sawyer, the said

cause has been prosecuted by said Sawyer in the place and stead of said Mills & Cain, and on an agreement between them as to a division of a certain part of the compensation to be received therefor; and it appearing that by such agreement said Sawyer is authorized to collect and receipt for such compensation as may be due all said solicitors for said complainants for their services in said cause, and said accounting between the several defendants having been conducted on behalf of the defendant corporation entirely by the said claimant A. L. Sawyer; and it appearing by computation that interest on the amount so owing by said Menasip Perron to said defendant Perronville Shingle Company from August 12, 1909, to date, at 5 per cent. per annum, aggregates the sum of $1,247.14, thus making the aggregate of said indebtedness to date the sum of $12,131.40.

"And it further appearing that pursuant to orders of this court, entered herein under date of May 4, 1911, the said defendant Menasip Perron has paid for disbursements in said cause, out of the sum so owing by him the sum of $293.50, which, with interest to date, making a total of $301.81, should be deducted from the amount so owing by him, leaving the net balance of his indebtedness to said defendant corporation the sum of $11,829.50:

"Therefore it is ordered, adjudged, and decreed by the court: That the defendant Menasip Perron account for and pay over to the several parties as hereinafter mentioned or to their counsel, so much of the assets of said defendant corporation now in his hands, aggregating, as above mentioned, the sum of $11,829.59, and is hereby decreed to be due to the several claimants thereto and parties hereto as hereinafter specified; that the said claimant Ford River Lumber Company have and recover of and from the said defendants the sum so found to be due to it as above recited, together with its costs by it about its claim disbursed, now here taxed at the sum of $69.60; that the said claimant A. L. Sawyer have and recover of and from said defendants the sum of $3,174.80, the amount so found to be due to him, as above recited, for his compensation and for the balance of his disbursements in behalf of the defendant Perronville Shingle Company, it being hereby intended that such

allowance includes the entire service rendered by said A. L. Sawyer and his associates the said Mills & Cain, at the instance of the complainants and in the interests of the corporation defendant, except such services as have been rendered in the contest of the claim of the Ford River Lumber Company as against the defendant Perronville Shingle Company, for which services, claim by said Sawyer, against said defendant corporation, has been made and is hereby disallowed; and the question of the adjustment of the allowance hereby made to said Sawyer, and as to whether or not any part thereof, and, if so, what portion, belongs to said Mills & Cain, is left to an adjustment between themselves, and is not here determined, said allowance being made to said Sawyer to cover the whole of said services of all said solicitors for the complainants in view of the recitals above, including the delegated authority to said Sawyer to collect such, if any thereof, as properly may belong to said Mills & Cain; that of the remaining balance of said assets, amounting to the sum of $5,121.31, the complainants, in the ratio above mentioned, have and recover of and from the said defendants one-third thereof, amounting to the sum of $1,707.10, together with their costs aforesaid now here taxed against said defendants at the sum of $1,579.80 as above recited; provided, said sum of $1,707.10 so found due said complainants may be required to be paid by said defendants only upon the production and surrender, for the use of the defendants, of the certificates of stock representing the interests of the said complainants in the said defendant corporation, or on the further order of this court; and that said several claimants and complainants, in addition to the amounts above specified, have and recover of and from said defendants interest at the rate of 5 per cent. per annum from the date of this decree, upon the amounts due them respectively; and it is hereby further ordered, adjudged, and decreed that, in default of payment of any of the several sums above provided to be paid, the parties thereto each, respectively, may have execution therefor according to the amount his due."

The commissioner's findings with reference to the

liability of Perron were based upon the theory that there was such confusion in the assets of Perron and the defendant company that the only equitable solution of the problem would be to divide all the assets of Perron and the company on the basis of the capital invested at the time the company was incorporated. The circuit judge refused to follow the findings of the commissioner as to a *pro rata* distribution of the assets on the theory of confusion, and proceeded to state an account between the parties.

The claims of complainants as now urged are as follows:

"(1) That the findings of Commissioner Eastman as to a liability of defendant Perron, on account of the confusion of the assets and business of the two defendants by Perron, should be confirmed, modified only to accord with the subsequent establishment of claims against the defendant corporation, and an adjustment should be had on the basis of the capital invested by the company, and by Perron.

"(2) In case such commissioner's findings are not confirmed on the theory of confusion, and an equitable division of assets because thereof, then the said commissioner's findings should be confirmed on numerous items of account and business essentially entering into an accounting between the parties, thereby materially increasing the indebtedness from defendant Perron to the defendant corporation, over and above the amount awarded by the findings of Judge Stone.

"(3) The allowance made by the lower court to A. L. Sawyer, as solicitor's fees for services rendered in behalf of the defendant corporation, should be increased to accord with the petition, and, further, to cover the additional work occasioned by defendant's appeal.

"(4) As a part of their costs complainants should be allowed their reasonably contracted liability and their disbursements for the expert accountant, Hulsapple, and the mileage and attendance fees of complainant Abraham Sant, as a witness, as set out in the proposed bill of costs, and supported by the affidavits thereto attached.

"(5) The decree as entered should be further altered and modified by expunging therefrom that portion thereof which reads:

"'Provided said sum of $1,707.10, so found due said complainants, may be required to be paid by said defendants only upon the production and surrender, for the use of the defendants, of the certificates of stock representing the interests of said complainants in said defendant corporation, or on the further order of this court.'"

*Commissioner's Findings.* It is urged by complainants that the well-established principle of equitable jurisprudence that the Supreme Court will not disturb the finding of a judge or chancellor unless clearly wrong, he having had the advantage of seeing the witnesses and observing their conduct, should be applicable to cases where reference is had to a master, who in turn reports his findings under the reference. In an early case *(Near* v. *Lowe,* 56 Mich. 632, 633 [23 N. W. 448]) this court said with reference to such findings:

"Complainant raises certain legal questions. *First,* he insists that the report of the commissioner, like that of a referee at law, should be held a conclusive finding upon the facts, so far as it appeared there was any evidence to support it. But this is not the rule in equity. The judge must decide upon the facts on exceptions, according to his own view of what is established by the proofs."

These findings are considered advisory by the court, and will be accepted or disregarded, according to the court's judgment as to the weight of the evidence. *Kimberly* v. *Arms,* 129 U. S. 512 (9 Sup. Ct. 355).

It is the claim of the defendant that Abraham Sant came to the defendant Menasip Perron, and by glowing representations induced him to buy a two-thirds interest in the Northern Shingle Company, a bankrupt concern, whose stockholders were S. E. Packard, F. H. Baker, and Sant. A reading of his testimony

is convincing that Perron was a man well versed in business, and a man of general intelligence, although he could not read or write. He had been in the cedar business, and it was understood, when the business of the Northern Shingle Company was purchased and the defendant company formed, that Sant was to take charge of the mill and the manufacture of shingles. This he did for some time, but then left, and gave but little further attention to the affairs of the company. In the negotiations for the purchase of the Northern Shingle Company it was ascertained that it would require about $10,000 to pay its indebtedness, which sum was to be the price asked for a two-thirds interest, which Perron was to purchase. It is the claim of defendant that Baker, one of the owners of the old company, had purchased certain timber lands from a man named Portlance for the use of the company, at a price of $2,000, which money had been paid by him, and it was insisted that this Portlance stumpage be taken over as a condition of the sale of his stock. It is Perron's claim that he agreed to advance this $2,000 for the company, and agreed to pay $8,900 to Packard and Baker for their interest in the old company; Sant having agreed, in order to consummate the purchase, to contribute the remaining $1,100 to make the $10,000 required. It is the complainants' claim that the entire $10,900 went to pay for this two-thirds interest in the stock of the new corporation. Perron drew from the company out of its first receipts this sum of $2,000, which he claimed he advanced, and it is urged that this was illegally done. The commissioner so found, but the circuit judge, in reviewing this finding, sustains the contention of Perron, and held the $2,000 as an advancement and the withdrawal of that amount as proper. This conclusion is substantiated by the testimony of Perron and Mr. Cummiskey, who was the attorney who represented Perron at the reorganization. It

would not be profitable to attempt to review the evidence concerning this item, but an examination of all the evidence with reference to this matter satisfies us that the conclusion and finding of the circuit judge was correct.

*Camp Losses and Other Items in Dispute.* The controversy which is involved in these items has necessitated a careful examination of the record and of the claims of the parties, which are elaborately and fully set forth in briefs of counsel. In such a mass of detail as is here involved it is almost an impossibility to work out an exact accounting, but we are firmly convinced that the findings of the circuit judge resulted in as fair, complete, and equitable a solution of these matters as can be made, and we have therefore concluded to adopt them as our own:

"The case abounds with bad bookkeeping. For this condition all of the parties are responsible. The books of a corporation are open to the inspection of all stockholders. 1 Cook on Corporations, § 320. It was the right and duty of complainant Sant to have examined the books, or to have had them examined, from time to time, when he visited the mill. Although he may have been negligent in this, still he was entitled to honesty and fair dealing on the part of defendant Perron, who had really become the general manager of the concern.

"At the inception of the business it was agreed on the part of complainant Sant (and when I say complainant Sant I mean Abraham Sant, who in all things acted for his wife), defendant Perron, and the corporation that the company was to buy the logs that Perron put in, and if any more were needed, they were to buy them from outsiders, and there was no agreement, either one way or the other, as to whether any camps should be run by the company. Upon this subject complainant Sant testified on page 14 of the testimony as follows:

" 'The only arrangement I know of was that we were to buy our logs of Mr. Perron at the going prices; that was the arrangement made at the first meeting we had.'

"This brings us to the question of the camps and the camp shortage. It may as well be stated here that when Mr. Perron became the general manager of this concern he was entitled to a reasonable compensation for his services. Not necessarily the amount charged by him, but a reasonable compensation. That was the rule applied to the Supreme Court in *Miner* v. *Ice Co.*, 93 Mich. 97 [53 N. W. 218, 17 L. R. A. 412], where fraud was charged against the manager. I am satisfied that the sum charged by Mr. Perron was reasonable, and it should stand. If, however, he was to furnish the company with logs at the going prices (and there is no evidence that he charged more than the going prices), then he should assume and become responsible for the camp shortage. It cannot be that the company should pay him a salary for his services and pay him a reasonable profit, or the going prices, and also be responsible for the camp shortages. This would make the company an insurer of Mr. Perron's business. This would neither be just nor equitable. I have examined the evidence carefully upon this question, and am satisfied that the company should be credited and Mr. Perron charged with the camp losses or shortages to the amount of $6,739, and with interest thereon, $2,358.65, in all, $9,097.65. Upon the subject of interest charged the company I must say that I think that it was excessive. An agreement to pay more than 5 per cent. must, under our statute, be in writing. I have no doubt that in some instances Mr. Perron paid for the company more than 5 per cent., but he has not shown how much. He seems generally to have borrowed money on his own account and loaned it to the company. It is very clear that he charged the company more than 5 per cent. in all cases. An instance of this charge is the Golden purchase. Upon the evidence as it stands I think that the company should be credited, and defendant Perron charged, with an interest excess of $1,782.21, and interest thereon, $445.55, making in all $2,227.76.

"I come up to the question of the margin of men's time. This is a subject upon which I have had a good deal of difficulty. It appears that from the year 1899 to 1906 Mr. Perron drew from the company as mill labor a sum aggregating $31,577.68. Nearly all of this was at the rate of $2 per day for each man. Here

was an average margin of 30 cents per day more than Perron paid for these men. Should he be permitted to charge this excess? I think not, in the light of the evidence. Applying the strict rule laid down in *Miner* v. *Ice Co., supra,* it certainly would not be allowed. If we apply the more liberal rule of *Walsh* v. *Goulden,* 130 Mich. 539 [90 N. W. 406], that an agent may purchase of his principal, so long as he acts in good faith, and his principal is informed of the situation, the right to deal as here shown would not exist, in the absence of knowledge in the corporation. Such knowledge existed in the sale of logs, as we have shown above. But where a party occupies the dual position of a representative of the corporation and an interest in the matter as a private person, the strictest rule should be applied. I think that the company should be credited and defendant Perron charged with 3/20 of this sum, amounting to $4,736.65, to which interest should be added, $1,184.16, making a sum of $5,920.81.

"Coming to the mistake of a double charge for certain logs sold by defendant Perron to the company, it is only necessary to say that the defendant's counsel say in their brief:

" 'This $410.24 should be charged back to Mr. Perron, and then the company has suffered no loss on that account.'

"The amount of such mistake is $410.24, add interest, $143.58, making the sum of $553.82. There should be credited to Mr. Perron and charged to the company the error in the Ford River Lumber Company deal of $1,942.90, add interest $485.72, making a total of $2,428.62. As nearly as I am able to gather from the testimony, it appears that in 1906 the company was owing Mr. Perron upon the books $3,901.88. These are Mr. Perron's own figures, and while he claims that the company owes him more by reason of errors, he gives no definite figures, and the amount here stated, added to the sum of $1,942.90 above credited to defendant Perron, makes the sum due him larger than is claimed by defendants' counsel in their brief. To the above sum of $3,901.88 should be added interest $585.28, making the sum of $4,487.16. To recapitulate. There should be charged to defendant Perron camp losses or shortages, with interest,

$9,097.65; excessive interest with interest, $2,227.76; margin on men's time and interest, $5,920.81; mistake on logs and interest, $553.82. Total to be charged Perron, $17,800.04. He should be credited, by error and interest, $2,428.62, amount due him, with interest, $4,487.16, $6,915.78, balance, $10,-884.26.

"This sum of $10,884.26 shows the total assets of the company according to these figures. Under the evidence, I am quite content to let these figures stand. Much might be said of the bad bookkeeping. But I do not believe that there is such confusion as leaves the matter in utter chaos. I think that a good deal depends upon the spirit in which such an examination is entered upon. If we attempt in the spirit of fairness to get at the facts that will aid us. It is unreasonable to suppose that Mr. Perron or Mr. Meloche can, at this late day, give the particulars or circumstances of each entry, or the names of the men, or the number of teams that did certain work. I believe that the above result is a just one. It should be borne in mind that this company suffered a fire loss, over and above the insurance collected, of from $15,000 to $25,000. If we consider the cost of repairs and sawmill, the latter sum will be exceeded. More than its entire capital was thus wiped out of existence, a fact that seems to have been lost sight of, as it necessarily must have been, upon the basis of the commissioner's result.

"The claim of the complainants and the conclusion of the commissioner cannot be sustained, except upon the theory that both the defendants Perron and Meloche have been guilty of the grossest fraud and perjury; that the defendant Perron contemplated the wrecking of the company, with an intention to defraud the complainants. This is really charged in the bill of complaint. This is an extreme view to take of the case. I do not believe that it is sustained by the evidence. The testimony of both Perron and Meloche is reasonable and candid, and I see no reason to disbelieve it. If believed, there is no fraud in the case. The case cannot be disposed of upon the ground of bad bookkeeping. If the charges for team work were just and true, and the amounts were properly entered, the fact that all of the details were not entered does

not show them to be false. The same is true of other charges. If they were known to be just and correct at the time, as is claimed by defendant Perron and by Meloche, they remain so still, notwithstanding the lack of detail. I believe that the conduct of Perron was honest, and in the main correct. In the particulars above pointed out in which I have charged him with certain amounts, I think he was wrong in his conclusion, but not necessarily dishonest.

"Even in the overcharge for men's work, I think that Perron believed that he was justified in making the charges. But owing to the peculiar relation which he sustained to the company, by reason of his own individual interests, I think he was wrong in the charges. After the fire the fact that the expense of getting the material out of the river and putting it in shape for sale was large, is not at all surprising under the circumstances.

"I cannot believe that under the circumstances of the case we are justified in disposing of it on the doctrine of confusion of goods. The case should stand and be disposed of upon its merits. It is better to apply a harsh rule of accountability, as it may be said we have done in the item of margin of men's time, and allow a large sum to be charged, based upon evidence in the case, than to try to apply the doctrine of confusion of goods, because it may be a larger result."

*Claim of A. L. Sawyer.* That a minority stockholder may file a bill to force an accounting and wind up the affairs of the corporation where the officers in control refuse or neglect so to do, is well settled in this State. *Miner* v. *Ice Co.,* 93 Mich. 97 (53 N. W. 218, 17 L. R. A. 412). In the instant case the directors in control are the parties charged with the wrongdoing; and, under these facts, it was unnecessary for the minority stockholder to make an effort to induce the directors in control to act. *Robinson* v. *Motor Car Co.,* 170 Mich. 163 (135 N. W. 897).

The litigation instituted by the minority stockholder, and vigorously opposed by the directors in control, has resulted in the recovery of a substantial

sum for the benefit of the corporation. The rule as laid down in the case of *Trustees* v. *Greenough,* 105 U. S. 527, that "one jointly interested with others in a common fund, who, in good faith, maintains the necessary litigation to save it from waste and secure its proper application, is entitled in equity to the reimbursement of his costs as between solicitor and client, either out of the fund itself, or by proportionate contributions from those who receive the benefit of the litigation," has been . cited with approval in numerous decisions of the Federal courts. See *Central Railroad, etc., Co.* v. *Pettus,* 113 . U. S. 116 (5 Sup. Ct. 387). This rule, that the costs as between solicitor and client will be paid out of a fund under the control of a court of equity to persons who have been successful in a suit concerning it, resulting in benefit to all interested in the fund, has been applied by the Federal courts to suits brought by stockholders for the benefit of the corporation. The allowance may be made either to the complainant or to the solicitors themselves, without application by their immediate client. *Meeker* v. *Iron Co.* (C. C.), 17 Fed. 48; *Wm. Firth Co.* v. *Cotton Mills* (C. C.), 129 Fed. 141; *McCourt* v. *Singers-Bigger,* 145 Fed. 103, 76 C. C. A. 73 (7 Am. & Eng. Ann. Cas. 287) ; *Colley* v. *Wolcott,* 187 Fed. 595, 109 C. C. A. 425. See, also, *Grant* v. *Lookout Mountain Co.,* 93 Tenn. 691 (28 S. W. 90, 27 L. R. A. 98).

It is urged that no individual interested in the corporation other than the complainants received any benefits from the result of the litigation. The corporation, however, is a legal entity, separate and distinct from its individual stockholders, and, as the trial judge properly said, the question is not, "What is the advantage or disadvantage resulting to any stockholder or stockholders from the law suit, but to the corporation itself." The corporate assets belong to the corporation for the purposes of the corporation,

and no stockholder has any right thereto until all the just claims against the corporation are paid. It seems just and equitable that the corporation should pay the reasonable expenses incurred in bringing into its treasury funds which would not have been recovered without the efforts and the litigation instituted by complainants. As to the compensation of solicitor of complainants, the contract made by them and referred to in the terms of the decree above set forth should not be binding. The complainants had no right to contract for the corporation as to the amount of these fees. The corporation should be, and only can be, held for what under the circumstances of the case are reasonable fees. In determining the amount of these allowances considerable latitude should be given the court below, as it has better means of knowing what is just and reasonable than the appellate court has, being familiar with the current charges for services of similar character in the locality. Nothing has been called to our attention that would warrant us in finding that the amount allowed to complainants' solicitor in the instant case is excessive or unreasonable.

*Taxed Costs.* In the proposed bill of costs of complainants there is an item of $2,509.32, which is made up of the charges of the Federal Audit Co., Ltd., for services and expenses of A. B. Hulsapple, an expert accountant, secured by complainants to make an audit of the books of the defendant company. The amount allowed by the circuit judge for this item was $1,100. We know of no authority in this State which justifies the taxing of this item as legal costs. It is a well-established proposition of law that costs as between parties litigant are statutory, and were not given at the common law. These costs should be limited to such taxable costs as the statute prescribes. *Booth* v. *McQueen,* 1 Doug. (Mich.) 41; *Jeffery* v. *Hursh,* 58 Mich. 246 (25 N. W. 176, 27 N. W. 7) ; *Goff* v. *Cass Circuit Judge,* 152 Mich. 121 (115 N. W. 1059). How-

ever, the item might very properly have been allowed to complainants as a necessary expense of litigation, and, for the reasons given in allowing claim of solicitor for complainants, the amount of $1,100 fixed by the circuit judge will be allowed as a legitimate disbursement to complainants.

*Meloche Stock.* Counsel for defendants contend that the court did not have jurisdiction to make any decree or order in this cause because A. H. Meloche, who is a stockholder, was not made a party to the litigation. The record conclusively shows that he was only a nominal stockholder, and that this one share of stock owned by Meloche was given to him by the defendant Perron, so that he might be a director. He testified that he acted under orders from Perron regarding the company's affairs. He appeared in court below during the taking of the testimony, and raised no objection to the proceeding, nor has he made any attempt to intervene. The defendants under these circumstances should be estopped from now claiming that the court has no jurisdiction to enter a decree because Meloche was not made a party defendant.

*Pledgees' Interest.* Some controversy is had as to whether the stock owned by complainants is now pledged, and statements foreign to the record with reference thereto are contained in briefs of counsel. On the record as made it appears that at the time the company was formed in 1899 the stock was pledged by Sant in order to obtain a loan, but it does not appear whether the loan was ever paid and the stock released. The decree of the trial court provides, however, that the amount found due complainants shall be paid over only upon production and surrender of the certificates of stock representing the interests of complainants, which protects the interests of the pledgee in case the stock is still pledged.

With the exception of holding the item of $1,100 for

services of expert accountant as a disbursement rather than as taxed costs, the decree of the court below will be affirmed, with costs to complainant.

MCALVAY, C. J., and BROOKE, OSTRANDER, BIRD, and STEERE, JJ., concurred. STONE and MOORE, JJ., did not sit.