BOYCE *v.* WENDT.

1. ACCOUNTING—OIL AND GAS LEASE—FINDINGS OF COURT—RECORD.
  In suit by parties who acquired interests in an oil well lease from oil well driller for accounting by holders of remaining shares in such lessee interest, which defendants, under a trust agreement, had taken over development of leasehold interest upon default of plaintiffs' assignor, finding of trial court that accounting by defendants had been false and incorrect, that they had been recreant in their trust and owed plaintiffs a stated sum *held*, amply sustained by record.

2. MINES AND MINERALS—OIL AND GAS LEASE SYNDICATE—RECEIVERS.
  Appointment of receiver to conduct affairs of oil and gas lease syndicate under direction of trial court *held*, for best interests of plaintiffs, assignees of oil well driller, as well as defendants, holders of remaining share of lessee interest in suit for

accounting, where court's finding that defendants had made false and incorrect accounts, had been recreant in their trust, and owed. plaintiffs money was amply sustained by record.

3. RECEIVERS—APPOINTMENT—REMOVAL OF TRUSTEES UNDER OIL AND GAS LEASE SYNDICATE.

The appointment of a receiver to conduct the affairs of a syndicate operating lessee interest under an. oil and gas lease in effect constituted a removal of trustees under syndicate agreement and appointment was properly made where there was ample and justifiable cause for removal of trustees.

4. ACCOUNTING—COSTS—EXPENSES—DISCRETION OF COURT.

The allowance of costs and expenses in connection with an accounting under an oil and gas lease syndicate is a matter of discretion of the trial court.

Appeal from Allegan; Miles (Fred T.), J. Submitted January 13, 1943. (Docket No. 86, Calendar No. 42,255.) Decided May 18, 1943.

Bill by Edward Boyce and others against Albert R. Wendt, Fred H. Roth, and Jacob Bolema for determination of rights under an oil well lease and trust agreement, an accounting, and other relief. Cross bill by defendants Roth and Bolema for a lien, an accounting, and other relief. Decree for plaintiffs against defendants Roth and Bolema. Defendants appeal. Plaintiffs cross-appeal. Affirmed.

*Alexis J. Rogoski,* for plaintiff.

*R. Burr Cochran,* for defendants.

CHANDLER, J. The procedure had in this case is so well and concisely stated by the trial court in his opinion filed in this cause that we adopt the following therefrom:

"This suit was begun August 15, 1940, by Edward Boyce against Albert R. Wendt, and Fred H. Roth,

individually and as trustee, for an accounting. November 22, 1940, these defendants filed an answer, sworn to, to which they attached their account; December 3d, plaintiff filed reply; on February 5, 1941, by stipulation and order, the other plaintiffs were permitted to intervene; by this stipulation, such interveners adopted the plaintiff's bill of complaint; February 13, 1941, a temporary receiver, Walter Aurich, was appointed; he filed a bond and has since apparently had control of the property involved. February 5, 1941, there was a substitution of attorneys and thereafter R. Burr Cochran represented the defendants. On February 5, 1941, a petition was made by Jacob Bolema to intervene for a defendant and an order was made on the same day permitting such intervention. On the same day, defendant Albert R. Wendt filed an amended answer disclaiming any interest in the subject matter of the suit; to this answer, no reply was made; thereafter, the suit proceeded against Fred H. Roth and Jacob Bolema as defendants. By the 'trust agreement' dated October 16, 1939, these defendants Fred H. Roth and Jacob Bolema became 'trustees;' and by the drilling contract with David A. Roberts entered into on the same day, October 16th, these trustees contracted for such drilling. It thus appears proper that these trustees should assume the responsibility of defendants in this case. It also appears that the intervening plaintiffs are interested in exactly the same manner as is plaintiff Boyce.

"On February 5, 1941, defendants Fred H. Roth and Jacob Bolema, filed 'separate answer and cross bill,' they adopted the material parts of the answer theretofore filed by Wendt and Roth but with certain additions and amendments; by such answer, the 'trust agreement' is made a part thereof and they allege facts indicating a claim of waiver and estoppel as barring all or certain of the claims of the plaintiffs,

"By their cross bill, they seek affirmative relief in the way of a lien on the property involved to reimburse them for certain claimed expenses and for any amount found due them on the accounting.

"April 21st and 22d, a hearing was had on the accounts and various items were agreed upon and a number of witnesses were sworn [and?] testified; thereafter, briefs were filed, and the matter submitted to the court indicating the account that should be allowed.

"Defendants devote considerable attention in their brief to the proposition that plaintiffs have 'waived' the objections to their account which they now urge. However, a waiver presupposes full information on the subject; from the testimony it may fairly be gathered that such full information was lacking; defendants admit some errors in the account and others are clearly erroneous. Plaintiffs are entitled to maintain the suit for an accounting."

This is essentially an accounting case and required of the trial court an examination of, and an investigation into, many hundreds of items occupying some 30 pages of the record herein. The lengthy opinion of the court and the decree entered thereon show meticulous care and almost inexhaustible patience in the trial and determination of the case.

It appears from the record that prior to and during the year 1938, defendants Bolema, Roth and Wendt associated themselves together for the purpose of acquiring and developing oil and gas leases, and that they did acquire a number of such in Allegan county, among which was a lease of 90 acres known in this proceeding as the "Van Der Poppen" lease, and that on or about April 8, 1939, in order to enable them to comply with the requirement

that they develop these premises for oil and gas, they entered into what is called a "farm-out" agreement with one Edgar P. Wyman whereby Wyman undertook to drill a well on this leasehold. Wyman was given a 5/8 working interest in such well so to be commenced and drilled by him, now known as "Van Der Poppen Well No. 1," and was authorized to sell so much thereof as was necessary to secure funds for that purpose, and he did market such 5/8 interest to plaintiffs. After drilling 500 or 600 feet, the record shows that he defaulted in his agreement with defendants, and appropriated moneys he had received from plaintiffs to his own use. Because of such default, on September 15, 1939, defendants Roth and Wendt served upon Wyman a notice declaring his rights under the "farm-out agreement" terminated. Later defendants undertook to continue operations under a new agreement with plaintiffs, in which agreement plaintiffs, who are termed the "founders," were to retain an interest in said development by submitting to an assessment for payment of their proportionate share of the expense for the completion of said well. The well was to be completed by Roth and Wendt, who were termed as "trustees" in said agreement, and all parties to the agreement were to share in the costs of drilling and development in proportion to the interests they originally had with Wyman, and were to share in the profits of this and any other well drilled up to the number of four in proportion to their holdings.

The defendants, Roth and Bolema, were interested in the development of other property adjacent to the "Van Der Poppen" lease. Bolema spent most of his time in field operations and Roth looked after the accounting part of their business. It fairly appears that these two defendants felt under moral

obligation to the plaintiffs for the Wyman fiasco and agreed, orally, that Roth, who would not have much if anything to do except with the accounting, would make no charge for his services and that Bolema, who was in the field most of the time, would make no charge, except possibly for some mileage expense in connection with the operation of his automobile in overseeing this development. This trust agreement was a lengthy one, prepared by defendants and evidently copied from a form that they had used in some former gas and oil promotions in which they were engaged, and we doubt that it would serve any useful purpose to quote extensively from it. This written agreement, however, did provide that Roth was to have charge of the financial affairs, was to collect from the sale of oil and gas; that Bolema was to supervise the drilling, equipment and operating and care for marketing and storing oil and gas produced; that the "trustees" were to pay taxes, disbursements and other expenses, and should be reimbursed for such expenses; and, that said "trustees" should have a lien upon the subject matter of the trust for all costs, damages, expenses and charges not arising from their own default or neglect and should be compensated for their services.

The trial court found that the accounts rendered by the defendants to the plaintiff, and the intervening plaintiffs were incorrect and false, and from the testimony determined that there was due and owing from defendants to plaintiffs the sum of $1,154.04.

The court further found that defendants had failed to keep and preserve proper or sufficient records; that they had commingled funds belonging to plaintiffs with funds belonging to themselves so that it was almost impossible to determine the extent of

their misappropriation of plaintiffs' funds; that in many other particulars they had been recreant to their trust; that defendants were of doubtful solvency, having made an assignment for the benefit of their creditors; that a large number of persons furnishing labor and material, or both, for the purpose of drilling, equipping and maintaining said wells, or for some of these operations, have unpaid claims; and, that the interests of all persons interested in said so called "trust agreement" would be best served by continuing the appointment of one Walter Aurich as receiver of the trust property, he having theretofore been appointed as temporary receiver, such receivership to continue under the direction of the trial court until further order of said court.

The court, by its decree, awarded to plaintiffs taxable costs against said defendant trustees in addition to an attorney fee of $30. The bill was dismissed as against defendant Wendt, without costs.

From this decree, defendant trustees appeal, insisting that the court erred in finding a balance due from them to plaintiffs, and that the court should have awarded to defendant trustees, as against plaintiffs, the sum of $3,020.52, together with a lien on the trust property for said sum. Defendants also contend that the court erred in his refusal to allow defendant Roth any compensation for his services; that there was also error in the amount awarded defendant Bolema against plaintiffs, being about one-half of the sum claimed by said Bolema; and that the court also erred in holding the trustees responsible for any expense in connection with drilling and operating of said wells. The defendants further complain that the court was in error in appointing a permanent receiver, which in effect removed the defendants as trustees in connection with the operation and maintenance of said wells.

We find that the record amply sustains the findings of the trial court, not only in that the accounting of the defendants had been false and incorrect in many particulars and that they had been recreant to their trust, but also in the amount decreed against them. We find no merit in defendants' reasons and grounds of appeal, and reach the conclusion that the best interests of all parties involved will be served by the appointment of a receiver to conduct the affairs of this syndicate under the direction of the trial court.

From the decree entered, plaintiffs take a cross appeal, insisting that the court was in error in limiting the liability of defendants to the sum of $1,154.04, instead of $2,276.02, which plaintiffs claim should have been awarded to them. They also claim the court erred in refusing to require defendants to pay for the cost of obtaining a fair accounting, including counsel fees and the expenses incident to employing an accountant, and also in failing to decree the removal of the defendants as trustees and direct that some other person or persons be appointed in their place, thus terminating the receivership.

We find that the effect of the decree in this cause did constitute a removal of defendants as such trustees and that there was ample and justifiable cause for their removal.

The allowance of costs and expenses in connection with the accounting we treat as discretionary with the trial court and conclude that said court did not abuse the discretion vested in him.

The decree is affirmed, with costs to plaintiffs.

BOYLES, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.