MERKEL *v.* LONG.

ON REHEARING.

DECISION OF THE COURT.

1. TRUSTS—ATTORNEY FEES—PRESERVATION OR ADDITIONS—EQUITY.

Attorney fees for services rendered certain individuals in effecting a compromise settlement of a controversy over the construction of provision of a testamentary trust may not properly be decreed against the trust, where result is not beneficial to the trust by way of preservation of or additions to the trust estate, merely to avoid an inequitable result, although equity has inherent power to require payment of such fees out of the funds of the trusts where result is beneficial to the trust (CL 1948, §§ 702.45–702.49).

2. SAME—ATTORNEY FEES—FEES OF GUARDIAN AD LITEM.

It is not inequitable to require parties who engage counsel to initiate proceedings for approval of a compromise agreement resolving differences over ambiguous provisions of testamentary trust to satisfy their individually contracted obligations for attorney fees from their private funds, not the trust fund, and leave fees of guardians ad litem, appointed by the chancellor to assist him in protecting the interests of incompetent, unknown, and unborn heirs of the trusts' settlor and of the life beneficiaries of the trusts, to be taxed against the income and corpus of the trusts (CL 1948, §§ 702.45–702.49).

3. COSTS—REHEARING—ATTORNEY FEES—TRUSTS.

Costs of rehearing are allowed trustees against petitioners who sought court approval of compromise agreement respecting

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6, 8, 9] 54 Am Jur, Trusts §§ 636.1, 636.11 (Supp).
Allowance of attorney's fees in, or other costs of, litigation by beneficiary respecting trust. 9 ALR2d 1132.
[3] 14 Am Jur, Costs § 95.
[4] 14 Am Jur, Costs § 6.
[5] 54 Am Jur, Trusts § 562.
[7] 14 Am Jur, Costs § 26.

construction of ambiguous provisions of testamentary trust, where the trustees are successful in opposing assessment of fees against trust estate.

SEPARATE OPINION.

DETHMERS, O'HARA, and ADAMS, JJ.

4. COSTS—STATUTES—COURT RULES.
   *Generally, costs are governed by statute or court rule.*

5. TRUSTS—AMBIGUITIES—COMPROMISE AGREEMENT—APPROVAL.
   *Statutory proceedings, initially nonadversary, designed to bring before courts parties who have or might have a beneficial interest in an estate or trust fund but who, by virtue of legal disability, are unable to represent themselves or enter into an agreement resolving differences is principally to allow settlements, resolving controversies over ambiguous provisions, to be made with approval of the court so as to bind minors, unborn heirs, and unknown persons (CL 1948, § 702.45 et seq.).*

6. SAME—COMPROMISE AGREEMENT—ATTORNEY FEES—DISCRETION OF COURT.
   *The fact that benefits flowing from court-approved compromise agreement binding upon adult, minor, and unknown heirs involved in trust estates did not result in preservation of, or additions to, the trust estate would not preclude an award of attorney fees from the trust estate should the trial court in his discretion make allowance therefor (CL 1948, § 702.45 et seq.).*

7. EQUITY—EXPENSES OF LITIGATION—DISCRETION OF COURT.
   *An equity court has discretion and power, in making an award of costs of litigation to apportion the expenses and costs between the parties according to equitable principles applicable to the facts of the particular case, and such apportionment or denial of apportionment will not be disturbed unless it appears the discretionary power has been abused.*

8. TRUSTS—EXPENSES OF LITIGATION—APPROVAL OF COMPROMISE AGREEMENT.
   *The expense of litigation, including attorney fees and fees and costs of guardians ad litem, involved in effecting a judicial approval of compromise agreement between parties involved in a testate or trust·estate, some of whom are not under legal disability and others of whom are under legal disability or even unknown, in the absence of any statutory or court rule provi-*

*sion, may be disposed of by the court authorized to approve the agreement (CL 1948, § 702.45 et seq.).*

9. SAME—ATTORNEY FEES—EXPENSES—REMAND—EQUITY.

*Request of $37,500 for attorney fees, $555 for expenses, and $6,050 for guardian ad litem fees in equity proceeding to secure approval of a compromise agreement respecting an ambiguous testamentary trust should be remanded for determination by the trial court as to the propriety of amount and for the exercise of his discretion in awarding or not awarding fees and costs in accordance with equitable principles involved (CL 1948, § 702.45 et seq.).*

Appeal from Wayne; Piggins (Edward S.), J. Submitted June 4, 1964. (Calendar No. 30, Docket No. 50,383.) Decided April 9, 1965.

In the case of Frances Gray Merkel and others against Irvin Long and Mack Ryan, successor trustees under the will of Paul R. Gray, following approval of compromise agreement, petitions were filed by Dickinson, Wright, McKean & Cudlip, Lewis & Watkins, Samuel M. Lane, and others for attorney fees and expenses as guardian *ad litem* to be charged against the estate. From denial of trustees' motions to dismiss petitions and enter summary judgments, they appeal. Affirmed by Supreme Court that is equally divided between affirmance and reversal as to counsel fees for beneficiaries and affirmed as to fees and expenses for the guardians *ad litem*. See 372 Mich 144. Rehearing granted February 5, 1964. Affirmed in part, reversed in part.

*Dickinson, Wright, McKean & Cudlip (Robert E. McKean* and *Patrick J. Ledwidge,* of counsel); *Lewis & Watkins (Clarence J. Boldt, Jr.,* of counsel), all *in propriis personis.*

*Long, Ryan, Franseth & Spicer (Irvin Long,* of counsel), for trustees Long and Ryan.

## ON REHEARING.

SOURIS, J. (*for affirmance in part and reversal in part*). In *Merkel* v. *Long* (1963), 372 Mich 144, Mr. Chief Justice CARR, writing for himself and for three present members of this Court, concluded that a chancellor may order trustees to pay out of the funds of the trust estates the reasonable fees of the attorneys representing petitioning parties in a Dodge act proceeding for the services they rendered their clients. For authority, the Chief Justice relied squarely upon the doctrine of *Trustees* v. *Greenough* (1881), 105 US 527 (26 L ed 1157), and *Sprague* v. *Ticonic National Bank* (1939), 307 US 161 (59 S Ct 777, 83 L ed 1184).

Mr. Justice ADAMS, writing now on rehearing, concedes that the doctrine of *Greenough* and *Sprague* is inapplicable to the facts of this case, the litigation resulting in no "preservation of or additions to the trust estates". Justice ADAMS likewise concedes that there is no statutory or rule authority to support the exercise of such power by a chancellor in such cases. Having conceded the inapplicability of *Greenough* and *Sprague,* the authorities upon which Chief Justice CARR relied to reach the result he did, and having conceded the absence of statutory or rule authority in support of such result, Justice ADAMS nonetheless reaches the same result, but this time on the asserted basis of the great inherent powers of a chancellor to avoid "an inequitable result".

I agree with Justice ADAMS, as I said in my opinion for the remaining members of the Court in our immediately preceding decision in this case, 372 Mich at 155, that valid as the doctrine of *Greenough* and *Sprague* is (as it has been adopted by this Court for use in this State in appropriate circumstances by our decision in *Sant* v. *Perronville Shingle Co.*

[1914], 179 Mich 42), absent any benefit to the trusts as such, the doctrine was misapplied by the Chief Justice to the facts of this case. I agree with Justice ADAMS also that there is no statutory or rule authority for the chancellor's taxation of petitioners' attorney fees against the trusts; also that, to avoid "an inequitable result", equity would have inherent power to require payment of such fees out of the funds of these trusts.

However, I fail to be persuaded by Justice ADAMS' assertion that any inequitable result could occur in this case, or any similar case, by virtue of taxation of the fees of the guardians *ad litem* against the trusts, as affirmed by the Court's prior decision herein, and disallowance of taxation of petitioners' attorney fees against the trusts. In the first place, none of the cases cited by Justice ADAMS, all of which were exhaustively considered in our prior opinions, lends any support to his assertion of inequity. Not even Chief Justice CARR, who relied squarely upon those cases, so much as suggested that they stood for the proposition that a chancellor may award such attorney fees whenever failure to do so might "produce an inequitable result".

Second, no inequity would in fact occur by disallowance of such requested costs. In the view I take of this matter, those parties who engaged counsel to initiate this proceeding would and should satisfy their individually contracted obligations for attorney fees from their own private funds, as do other private litigants, while only the fees of the guardians *ad litem,* appointed by the chancellor to assist him in protecting the interests of the incompetent, unknown, and unborn heirs of the trusts' settlor and of the life beneficiaries of the trusts, would be taxed against the trusts. Indeed, in my prior opinion on original hearing, I wrote for four members of the Court that a part of the fees of the guardians

*ad litem* should be paid directly from income of the trusts thus allocating to the petitioning life beneficiaries who instituted this proceeding and for whose primary benefit its fruits are destined a substantial part of the cost of providing the services of the guardians *ad litem* made necessary by the proceeding they initiated.

Once again, I would affirm the chancellor's denial of the trustees' motions to dismiss the petitions for fees of the guardians *ad litem* and reverse his denial of the trustees' motions to dismiss the petitions for fees and expenses of the attorneys for the parties who instituted this proceeding. Further, I would allow the trustees to tax their costs of this rehearing against the petitioners below.

T. M. KAVANAGH, C. J., and BLACK and SMITH, JJ., concurred with SOURIS, J.

ADAMS, J. (*dissenting in part*). This case was before this Court in *Merkel* v. *Long*, 368 Mich 1, wherein a so-called Dodge act[1] agreement was approved, and in *Merkel* v. *Long*, 372 Mich 144. This is a rehearing granted from a 4/4 division in the latter on the question of award of attorney fees and fees to the guardians *ad litem*.

Previously the difference upon the Court was over whether there was a direct benefit to the trust estates as a result of the Dodge act proceedings. Chief Justice CARR found such a benefit, and, in accordance with the doctrine of *Trustees* v. *Greenough*, 105 US 527 (26 L ed 1157), and *Sprague* v. *Ticonic National Bank*, 307 US 161 (59 S Ct 777, 83 L ed 1184) recognized by this Court in *Sant* v. *Perronville Shingle Co.*, 179 Mich 42, and *Becht* v. *Miller*, 279

[1] PA 1921, No 249, as re-enacted in the present probate code, PA 1939, No 288, ch 2, §§ 45-48 (CL 1948, § 702.45 *et seq.* [Stat Ann 1962 Rev § 27.3178(115) *et seq.*]).

Mich 629, he affirmed the authority of the trial judge to award fees to the attorneys and guardians *ad litem*. Justice Souris found no benefit to the trust estates, distinguishing such a benefit from one to the beneficiaries. He would have denied award to the attorneys of the parties *sui juris* but would have permitted award to the guardians *ad litem*.

As a general rule, costs are governed by statute or court rule. See CLS 1961, § 600.2405 (Stat Ann 1962 Rev § 27A.2405) and committee comment thereon.[2] There is no statutory authority to support the exercise of the power which was asserted by the chancellor. Nor has provision for such action been made by this Court under its rule-making powers as provided for in CLS 1961, § 600.2401 (Stat Ann 1962 Rev § 27A.2401). Courts of chancery have sometimes drawn upon their reservoir of inherent powers to award reasonable expenses to a party in litigation.[3] The question upon this rehearing is whether the chancellor should be permitted to exercise such power. The question is one of power and not of the propriety of particular fees or the precise method by which the chancellor makes an award.

Dodge act proceedings were designed to bring before the courts parties who have or might have a beneficial interest in an estate or trust fund but who, by virtue of legal disability, are unable to represent themselves or enter into an agreement resolving differences. It was stated in *In re Peck's Estate*, 323 Mich 11, 22:

---

[2] See Final Report of Joint Committee on Michigan Procedural Revision, pt 2, § 18.2, p 140.

[3] See the discussion of the common-law practice as it existed in England in *Sprague* v. *Ticonic National Bank, supra*, pp 164, 165. These same powers are possessed by our circuit judges in chancery except as they may be modified by the Constitution and laws of this State. *Henkel* v. *Henkel*, 282 Mich 473, 478. For an example of the use of this power see *Mann* v. *Day*, 199 Mich 88, 97.

"The purpose of the act principally was to allow settlements to be made with approval of the court so as to bind minors and unborn heirs and others whose present existence or whereabouts cannot be ascertained."

*Trustees* v. *Greenough* and cases hereinbefore cited involved proceedings to bring about restitution of property to a fund, preservation of a fund from wrongful acts of the trustee, or some analogous situation. No such purpose is contemplated in a Dodge act proceeding (though it may be an incidental accomplishment), the primary purpose being the resolution by agreement of an ambiguity in a trust instrument.

A Dodge act proceeding begins as a nonadversary one instituted only after agreement has been reached by the parties not under some legal disability. It may become an adversary proceeding, in the sense that it may be defeated due to objection thereto, but primarily it remains nonadversary throughout. The chancellor is instructed to approve *an agreement* "found to be just and reasonable." CL 1948, § 702-.47 (Stat Ann 1962 Rev § 27.3178[117]).

In this case there are three separate trusts. Each trust has its own life beneficiary upon whose death the principal of the trust is to be distributed. The ambiguity in the testator's will made uncertain the manner in which distribution should be made. Under one theory, the principal would be divided among the heirs of the testator determined at the time of his death; under another, it would be divided among his heirs determined as though he had died immediately following the death of the life tenant; and under still another, it would be divided among the issue of the life tenant. As this Court observed in the first appeal, the Dodge act agreement eliminated all but the last of these possibilities in a

manner most nearly compatible with the probable intention of the testator. *Merkel* v. *Long,* 368 Mich 1, 15.

The problem of parties is illustrated by the fact that some of the children of one of the life tenants are of age and joined in the agreement but a younger brother and sister were unable to do so because of minority. Any one of the children could die before his parent and, under the agreement, never enjoy the benefit of the trust estate. It is also possible that persons who have not yet come into being may realize the prime benefits of the agreement.

The benefits attained were: (1) resolution of an ambiguity in the will; (2) the remainder of each trust estate will vest in those who were the probable objects of testator's residuary disposition; (3) the principal of the estates will be distributed directly to the issue of the life tenants relieved of diminution by estate taxes; (4) determination of those entitled to the remainder will aid in administration; and (5) the parties can plan their own affairs with certainty and make disposition of their own estates.

However desirable or substantial these benefits may be, none results in preservation of or additions to the trust estates. If such a result is necessary before attorney fees and costs may be assessed under the reasoning of *Trustees* v. *Greenough* and *Sprague* v. *Ticonic National Bank, supra,* and other cases, it does not follow that this conclusion is dispositive of the issue. The inherent powers of a chancellor in an equity proceeding, as has been noted, are great. Traditionally this Court has reposed great confidence in a trial court in the exercise of such powers. In *Boyce* v. *Wendt,* 305 Mich 254, it was said, (p 261):

"The allowance of costs and expenses in connection with the accounting we treat as discretionary

with the trial court and conclude that said court did not abuse the discretion vested in him."

The parties who are under no legal disability can pay their own counsel. The mental incompetent, the minor, the individual not yet in being, or others under a disability, for whose benefit and protection the act is designed, cannot. Yet all have a vital interest in the fund. All may have benefited from the result achieved. That some should have their attorney fees and guardians' fees paid from the fund, and some not, is almost certain to produce an inequitable result. Whether such is actually the case will be for determination by the chancellor upon remand. As was said by Mr. Justice Frankfurter in *Sprague* v. *Ticonic National Bank, supra,* at p 166:

"Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation."

The rule is stated in 20 CJS, Costs, § 13, pp 284, 285, as follows:

"In a suit in equity the court, by virtue of the discretion vested in it as to costs,  *  *  *  has power in a proper case to apportion the costs between the parties, according to the equitable principles applicable to the facts of the particular case; and unless it appears that this discretionary power has been abused, the court's action will not be disturbed as to its apportioning costs, or in denying apportionment."

It would seem that a Dodge act proceeding can be fully effectuated only if the chancellor is empowered to dispose of the entire matter, and that, in the absence of any statutory provision or court rule, this

should include the power to award attorney fees and fees and costs of guardians *ad litem*. The benefits to beneficiaries or possible beneficiaries of such a proceeding, because of the many different circumstances which may arise, can best be determined by the chancellor who has the responsibility of giving approval to the agreement. He, in his discretion, may award fees and costs and, if it is possible to do so, should make such awards against the respective interests as they have benefited by the proceeding.

In the present case, total attorney fees of $37,500, expenses of $555, and total guardian *ad litem* fees of $6,050 have been requested. For a determination as to the propriety of the same we remand this case to the trial court. The chancellor is instructed to exercise his discretion in awarding or not awarding fees and costs in accordance with the equitable principles herein indicated. He may, of course, deny as well as grant fees and costs if for any reason he determines that they should not be borne out of the trust estates.

The decision of the trial court should be affirmed. Costs to appellees.

DETHMERS and O'HARA, JJ., concurred with ADAMS, J.

KELLY, J., did not sit.