JACOBS v. DEARBORN HOLDING CO.

1. REFERENCE—CIRCUIT COURT COMMISSIONERS—COURTS.
   Circuit judge is not bound to follow advisory report and opinion of circuit court commissioner in purchaser's suit to rescind land contract where reference to commissioner was for purpose of taking and reporting evidence for consideration upon hearing in circuit court.

2. VENDOR AND PURCHASER—RESCISSION—SUBDIVISION IMPROVEMENTS.
   Rescission of land contract for purchase of lots in subdivision may not be had where vendor has substantially complied with his covenants as to improvements and purchaser made payments for long period after he knew of vendor's failure to perform in minor respect of which complaint is now made.

3. SAME—RESCISSION—FALSE REPRESENTATIONS.
   Alleged false representation that two subdivisions bearing similar names were but one *held*, insufficient to entitle purchaser of business lots to rescission where it has but little supporting evidence and such claim was negatived by description of the premises in the contract; public records, including tax levies; and nature of the physical separation of the two tracts.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 2, 1934. (Docket No. 11, Calendar No. 37,837.) Decided January 7, 1935.

Bill by Joseph Jacobs against Dearborn Holding Company, a Michigan corporation, and Hannan Real Estate Exchange, Inc., a Michigan corporation, to rescind a land contract. Objections filed to finding of circuit court commissioner by defendants. Bill dismissed. Plaintiff appeals. Affirmed.

*Frank A. Martin* and *Shapero & Shapero,* for plaintiff.

*Wiley, Streeter, Smith & Ford,* for defendant Hannan Real Estate Exchange, Inc.

WIEST, J. This is an appeal from a decree dismissing plaintiff's bill to rescind a land contract and have return of all moneys paid thereon.

Proofs were taken by a circuit court commissioner, under reference, and reported by him, together with an opinion that plaintiff was entitled to the relief prayed for. Exceptions were filed to the report and, upon hearing, the court rejected the findings of the commissioner, made independent findings from the evidence and dismissed the bill. Plaintiff, upon appeal, contends for adoption of the opinion of the commissioner.

The circuit judge was not bound to follow the report of the commissioner, for it was only advisory. The reference to the commissioner, in this instance, was not to take evidence and state an account between parties but to take and report evidence for consideration upon the hearing of the case in the circuit court and, therefore, his opinion upon the merits of the case was of no decisive moment.

October 5, 1925, plaintiff and William Schwartz (who later assigned to plaintiff) purchased the premises, under land contract, from the Dearborn Holding Company, a corporation. The land contract described the premises as:

"Lots numbered six hundred eighty-four to six hundred eighty-nine, inc. (684–689), of the Dearborn Hills Manor Subdivision No. One (1), according to the plat thereof recorded in the office of the register of deeds for Wayne county, Michigan, in liber 56 of plats, on page 33."

The vendor agreed to improve the subdivision with cement sidewalks, to curb and cinderize or stone all the streets, plant shade trees, install lateral sanitary sewers, water mains and hydrants, and provide a water supply. The contract called for a down

payment of $4,500, and $25,500 on or before five years, in monthly payments of $300.

With one exception plaintiff made the monthly payments until June, 1929, and from then on until April, 1930, by mutual arrangement, he paid $200 per month and, in September, 1930, promised to catch up with payments as soon as possible but paid no more and, in August, 1931, filed the bill to rescind and have recovery of $18,400 paid on the contract.

Dearborn Hills Manor Subdivision, No. 1, is south of the River Rouge, and consists of 51 lots. Dearborn Hills Manor Subdivision is north of the River Rouge, consists of 650 lots, and is separated from No. 1, by about 1,000 feet.

In the original bill plaintiff sought rescission for breach of covenants relative to improvements. After reference to take proofs, and on the eve thereof, plaintiff claims he discovered the fact that there are two subdivisions and, therefore, amended his bill to charge that they were represented to him as constituting one subdivision, and that fact gave him another ground for asking rescission. The subdivision in which plaintiff purchased was wholly distinct in name, location and recorded plat from the other subdivision plaintiff wants connected for the purpose of finding, to a large extent, the alleged breach of covenants. The River Rouge and vacant land separate the subdivisions. Plaintiff's contract lots are south of the river, and unplatted land is between the north side of the river and the large subdivision. Separation of the subdivisions is such in nature and extent as to challenge even a casual view of the terrain.

Dearborn Hills Manor Subdivision was recorded March 5, 1925, and Dearborn Hills Manor Subdivision, No. 1, was recorded July 16, 1925. The lot

numbers on the latter plat started where the lot numbers on the earlier plat left off, and this was done to comply with the policy of the public officers to avoid confusion of taxpayers and tax collectors.

Plaintiff's claim of breach of covenants, relative to improvements, and percentages unperformed, rested upon the asserted representation that both subdivisions were, in fact, but one and, therefore, the covenants covered both and breach thereof could be claimed accordingly.

The covenants relating to improvements, when applied to the subdivision in which plaintiff's contract calls for lots, have been substantially complied with and the failure now complained of has been of long standing, fully known to plaintiff and, with full knowledge thereof, he has continued with performance of the contract and cannot now invoke rescission.

Testimony of engineers in the employ of defendant Dearborn Holding Company disclosed that in 1925, 77.68 per cent. of the improvements had been installed; in subdivision No. 1, in 1926, 92.48 per cent.; 1927, 93.07 per cent.; 1929, 94.14 per cent.; 1931, 98.98 per cent.

Installation of the sidewalk in front of the lots in suit was delayed to await grading of the street by highway authorities.

In April, 1931, there were but three houses on the large subdivision. A witness for plaintiff testified:

"Building has slowed up, even on home subdivisions; there are lots of subdivisions on which they put sidewalks down and stone streets, and the sidewalks crumbled and the streets are all torn up by frost and water because they were not used."

The six lots in suit are on Michigan avenue, in the township of Nankin, Wayne county, and were platted and purchased for business purposes.

Plaintiff claims that in 1926, 1927, 1928 and the spring of 1929, when he visited the office of the Hannan Real Estate Exchange, the selling agent, he complained to Mr. Porter about the failure to install improvements and was put off by promises. In this he seems to have been mistaken for Mr. Porter did not enter the employ of the Hannan company until November, 1929, and he testified that the first time he ever saw plaintiff was at the hearing.

The alleged false representation, claimed to have been discovered on the eve of taking the proofs, has little supporting evidence and the probability thereof is quite negatived by the physical location of the two subdivisions, plaintiff's own contract and the records of the plats. A claimed representation, made about five years ago, that there was but one subdivision, and the falsity thereof not discovered until the hearing, having in mind the river and vacant land between the two plats, the description of the premises in the contract and the public records, including tax levies, is not very persuasive.

The economic and financial depression has rendered these and other lots in the subdivision of greatly lessened value and, had the covenants relating to improvements been fully carried out, instead of having been substantially performed, they would be of little benefit under present conditions and nonuser of the premises.

There being no case against the Dearborn Holding Company there is none against the Hannan Real Estate Exchange.

Decree affirmed, with costs to defendants.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.